UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

MARILYN HARTWELL,

    Plaintiff,

vs.                                                                 Case No. 15 CV 1103 JAP/GJF

SOUTHWEST CHEESE COMPANY, LLC,

    Defendant.

MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION TO FILE SECOND AMENDED COMPLAINT

In PLAINTIFF'S MOTION TO FILE SECOND AMENDED COMPLAINT (Doc. No. 32) (Motion), Plaintiff Marilyn Hartwell (Plaintiff) asks the Court for leave to amend her FIRST AMENDED CIVIL COMPLAINT FOR DISCRIMINATION IN EMPLOYMENT UNDER NMHRA; SEXUAL HARASSMENT UNDER TITLE VII; BREACH OF IMPLIED IN FACT CONTRACT; RETALIATORY DISCHARGE; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT SUPERVISION; VIOLATION OF 42 U.S.C. § 1981 (Doc. No. 14) (FAC) and add factual allegations supporting her claims against Defendant Southwest Cheese Company, LLC (SWC). Plaintiff has attached to the Motion, a proposed SECOND AMENDED COMPLAINT FOR DISCRIMINATION IN EMPLOYMENT UNDER NMHRA; SEXUAL HARASSMENT UNDER TITLE VII; BREACH OF IMPLIED IN FACT CONTRACT; RETALIATORY DISCHARGE; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT SUPERVISION; VIOLATION OF 42 U.S.C. § 1981 (Doc. No. 32 Ex. 1) (SAC). The SAC refers to exhibits, but no exhibits are attached.[1] Because Plaintiff has already amended her Complaint once, the Court has reservations about allowing an

---

[1] The exhibits to which the SAC refers are attached to the FAC, and the Court has referred to them as such.

1

additional amendment. However, under the standard set forth in Rule 15(a)(2), the Court will grant the Motion in part and will deny the Motion in part.[2]

## I. BACKGROUND

On April 5, 2016, Magistrate Judge Gregory J. Fouratt held an Initial Scheduling Conference. At the conference, the Court asked the parties if they were finished amending pleadings and adding parties. Plaintiff's counsel replied that he intended to move the Court to file another amended complaint. Clerk's Minutes (Doc. No. 27). On April 6, 2016, Magistrate Judge Fouratt entered an ORDER SETTING PRETRIAL DEADLINES AND BRIEFING SCHEDULE (Doc. No. 28) (Scheduling Order) and set case management deadlines. Under the Scheduling Order the deadline for Plaintiff to file amended pleadings was April 8, 2016. (*Id.*) Under the Scheduling Order SWC may amend its pleadings on or before April 28, 2016. (*Id.*)

In the Motion, Plaintiff recounts the following from the Initial Scheduling Conference:

> Counsel for Plaintiff indicated to the assigned Magistrate Judge that he would be filing such a Motion [to Amend] by Friday, April 8th, 2016 during the Initial Scheduling conference and counsel did not indicate concurrence. Therefore, this Motion is *deemed opposed*.

(Mot. at 1) (emphasis added).

Under this Court's local rules, a "[m]ovant must determine whether a motion is opposed, and a motion that omits recitation of a good-faith request for concurrence may be summarily denied." D.N.M. LR-Civ. 7.1 (a). Plaintiff did not correctly determine whether the Motion was opposed; therefore, the Court could, but will not, summarily deny the Motion. However, going forward, the Court will expect strict adherence to the local rules.

---

[2] In ruling on this Motion the Court has carefully considered the arguments in DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO FILE SECOND AMENDED COMPLAINT (Doc. No. 36) and in PLAINTIFF'S REPLY TO "DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO FILE SECOND AMENDED COMPLAINT" (Doc. No. 40).

On April 12, 2016, the Court sent a letter to counsel for Plaintiff and SWC and asked SWC to indicate in writing whether it would oppose the Motion, and whether SWC intended to file an additional motion to dismiss addressing the allegations in the proposed SAC. Counsel for SWC informed the Court that SWC opposed the Motion. SWC also requested a ruling on DEFENDANT'S SECOND MOTION TO DISMISS AND TO STRIKE (Doc. No. 19) (Second Motion to Dismiss), and SWC indicated that it plans to file a third motion to dismiss if the Court grants leave for Plaintiff to file the SAC.

On May 24, 2016, the Court ruled on the Second Motion to Dismiss. *See* MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S SECOND MOTION TO DISMISS (Doc. No. 43) (MOO). In the MOO, the Court dismissed without prejudice Plaintiff's first and second claims for failure to exhaust administrative remedies. Since Plaintiff has not corrected the fatal defect in those claims, the Motion will be denied as to Plaintiff's first and second claims in the proposed SAC. As for Plaintiff's third claim for breach of contract in the proposed SAC, the Court will grant the Motion because Plaintiff corrected that claim's defects. In the MOO, the Court partially dismissed other claims based on specific factual allegations. The Court will deny the Motion as to those specific allegations and additional allegations about events that occurred outside of the statute of limitations period.

Because the Court is ruling on the Motion after a ruling on the Second Motion to Dismiss, the Court will deny the Motion to the extent that new allegations in the proposed SAC would be subject to dismissal under the reasoning set forth in the MOO. By June 17, 2016, Plaintiff may file a new Second Amended Complaint that follows the rulings in this Order. All allegations that are time barred should not be included in the new Second

3

Amended Complaint. *Cf. Duncan v. Manager, Dept. of Safety, City and County of Denver*, 397 F.3d 1300, 1315 (10th Cir. 2005) (upholding district court's denial of motion to supplement complaint because additional facts were not actionable).

## II.    STANDARD OF REVIEW

Under Rule 15(a), a party may amend a pleading once as a matter of course. However, in all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).[3] Under Rule 15(a)(2), a party seeking to amend must show there was no "undue delay" or "undue prejudice" to the opposing party, or "bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Rehberg v. City of Pueblo*, Civil No. 10–cv–00261–LTB–KLM, 2011 WL 4102287, *4 (D. Colo. Sept. 14, 2011) (unpublished). The most important factor is whether the amendment would prejudice the nonmoving party by hindering the preparation of the party's defense. *Minter v. Prime Equipment Co.*, 451 F.3d 1196, 1207–08 (10th Cir. 2006). Most often, courts find prejudice when the amended claims arise out of a subject matter different from the subject matter of the complaint and raise significant new factual issues. *Id.* In addition, courts deny motions to amend when an amendment would be futile. *Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2007). An amendment would be futile if it would be subject to a Rule 12(b)(6) motion to dismiss. *Id.* Since a court may dismiss claims based on events that occurred outside of the statute of limitations period, a court may deny motions to amend for that reason. *Zhu v. Federal Housing Finance Bd.*,

---

[3] As in this case, once the court enters a scheduling order under Rule 16, other concerns arise. If a party amends its pleading after the deadline set in a Rule 16 scheduling order, then the party must not only meet the requirements of Rule 15(a), but the party must also meet the "good cause" requirement outlined in Rule 16(b)(4) for modifying the schedule. Since Plaintiff moved to amend her FAC within the deadline set by the Initial Scheduling Order (Doc. No. 28), Plaintiff must fulfill only the requirements imposed under Rule 15(a)(2) to obtain leave to amend. *See Rehberg v. City of Pueblo*, Civil No. 10–cv–00261–LTB–KLM, 2011 WL 4102287, *3 (D. Colo. Sept. 14, 2011) (unpublished) (stating that a party must meet both Rule 15 and Rule 16 standards only when the party moves to amend after the deadline set in the scheduling order).

No. 04–2539–KHV, 2006 WL 626044, *4 (D. Kan. Mar. 13, 2006) (denying motion to amend when additional allegations were outside of the limitations period for claim) (citing *Robinson v. Dalton*, 107 F.3d 1018, 1021 (3d Cir. 1997)). Finally, "[l]ateness does not of itself justify the denial of [an] amendment." *Minter*, 51 F.3d at 1205. However, "denial of leave to amend is appropriate 'when the party filing the motion has no adequate explanation for the delay.'" *Id.* at 1206 (citation omitted).

    III.    DISCUSSION

        A.    Timing of the Motion.

SWC asserts that the parties have already conducted significant written discovery on Plaintiff's claims, including the submission of additional requests for production allowed by Magistrate Judge Fouratt. SWC maintains that it will be prejudiced if the Court grants leave to amend because SWC will need to conduct additional written discovery. The Court agrees that a plaintiff may not wait until the last minute to add significant factual allegations or refine the theory of liability. But, SWC supports its argument with cases involving amendments presented inappropriately or much later in the process. For example, in *Evans v. McDonald's Corp.*, the plaintiff did not file a motion to amend, but instead, changed her theory of liability in her response to the defendant's summary judgment motion. 936 F.2d 1087, 1091 (10th Cir. 1991). The Tenth Circuit affirmed the district court's refusal to address the plaintiff's new theory of liability. *Id.* In *U.S. ex rel. Told v. Interwest Const. Co.*, the Tenth Circuit affirmed a district court's denial of a motion to amend a complaint after all discovery was complete and the parties had completed briefing on summary judgment. 267 F. App'x 807 810 (10th Cir. 2008). In *Mohammed v. Holder*, the district court denied a motion to amend because discovery was substantially complete and also because the amendment asserted claims on behalf of a class of

5

plaintiffs. No. 07 CV 2697, 2013 WL 4949282, *6 (D. Colo. Sept. 13, 2013). This case, by comparison, is in a much earlier stage. The need for additional written discovery is not unduly prejudicial to SWC.

      B.  Plaintiff's unexhausted NMHRA and Title VII claims: Amendment is futile.

In Plaintiff's first claim, she asserted that SWC violated the New Mexico Human Rights Act (NMHRA) by subjecting Plaintiff to a sexual, racial, and age-related hostile work environment. In the MOO, the Court dismissed Plaintiff's first claim because Plaintiff failed to exhaust administrative remedies for all claims of racial, sexual and age-related hostile work environment. Nothing in the SAC will change that ruling because the SAC recites verbatim the same basis for the NMHRA claim. Hence, Plaintiff's NMHRA claim remains unexhausted, and Plaintiff's Motion will be denied as to that claim because it is futile. *Flores v. Delevasquez*, 370 F. App'x 968, 969 (10th Cir. 2010) (upholding dismissal and denial of motion to amend because claimant failed to exhaust administrative remedies).

In Plaintiff's second claim, she alleged she was sexually harassed in violation of Title VII, 42 U.S.C. § 2000e-2(a). In the MOO, the Court likewise dismissed Plaintiff's second claim because Plaintiff failed to exhaust administrative remedies. Nothing in the SAC will change that ruling because the SAC recites verbatim the same basis for that claim. Hence, Plaintiff's second Title VII claim for sexual harassment remains unexhausted, and Plaintiff's Motion will be denied as to that claim. *Id.*

        C.    Plaintiff's Breach of Contract claim: Amendment is not futile.

In Plaintiff's third claim for breach of contract, she asserts that her at-will employment status was altered by management personnel's verbal representations that she would be fired only for good cause. In the MOO, the Court dismissed this claim without prejudice because Plaintiff failed to allege specifically what management personnel told her that led her to reasonably believe she had an implied employment contract. Plaintiff adds the following narrative to her SAC:

> When Plaintiff was hired in 2006 she was told by Brenda Miller, a Human Resources Manager at SWC that she would be on ninety (90) days [sic] probation. That [sic] after the probationary period, Plaintiff would be hired "full time." Miller told Plaintiff that SWC fired for good cause or good reason. George Chappell, the Plant Manager in 2006, said that SWC fired only for good cause or good reason during his introductory remarks to Plaintiff. In 2006, the Human Resources Manager Christine Palmer stated that SWC fired only for good cause or good reason during the training of Plaintiff. In 2006, a written policy manual was provided to Plaintiff promising severance pay of 8 weeks for an employee with over six years of employment.

(SAC ¶ 12.)

SWC argues that even with these additional allegations, Plaintiff's breach of contract claim would be dismissed; therefore, amendment of this claim would be futile. SWC points to a previous case in which this Court granted summary judgment in favor of SWC on a similar claim. *See Chavez-Acosta v. Southwest Cheese Co., LLC*, No. 12 CV 353 JAP/CG, MEMORANDUM OPINION AND ORDER (Doc. No. 56) at 24 (D. N.M. July 1, 2013). In that case, however, the record contained evidence that an employee handbook was given to Ms. Chavez-Acosta at hiring. The handbook stated that all employees were "at will" employees and that only a written statement signed by the president of SWC could alter an employee's "at will" status. *Id.* The Court dismissed Ms. Chavez-Acosta's breach of contract claim because she "failed to put forth any evidence that would support a finding that her employment was subject to

7

an implied contract not to terminate her except for 'good cause' after the 90-day probationary period." *Id.* The Tenth Circuit Court of Appeals affirmed that ruling:

> Even assuming that the words and actions of her supervisors informed Chavez–Acosta that her employment status had been modified, this would still be insufficient to overcome summary judgment. In New Mexico, "an implied contract is created only where an employer creates a reasonable expectation" of continued employment. We have previously found under New Mexico law that "repeated unequivocal written declarations of [an individual's] at-will status," particularly when these declarations include one that "explicitly preclude[s] oral modifications," are more than enough to make unreasonable a plaintiff's belief that her supervisor's statements and actions modified the at-will nature of her contract. That is precisely the situation here.

*Chavez-Acosta v. Southwest Cheese Co., LLC*, 610 F. App'x 722, 733 (10th Cir. 2015) (citations omitted). SWC points to those rulings and argues that, as a matter of law, the alleged verbal representations that Plaintiff would be fired only for cause are insufficient to create an implied contract. However, SWC's argument assumes that Plaintiff received the same employment manual with the same "unequivocal written declarations of her at-will status." Plaintiff has only alleged that she received an employee manual when she was hired. Moreover, Plaintiff was hired at SWC in 2006, but Ms. Chavez-Acosta was hired in August 2010. *Id.* at 724. Therefore, the Court cannot reasonably infer Plaintiff was given an employee manual containing the same language as that in the manual given to Ms. Chavez-Acosta. In sum, the allegations in the SAC that three management level employees orally represented that Plaintiff would be fired only for good cause are sufficient to state a claim that Plaintiff had an implied contract of employment and that the contract was breached.

Next, SWC contends that Plaintiff has failed to explain why she delayed bringing the allegations supporting an oral implied contract. SWC maintains that Plaintiff would have known about these allegations at the time she filed her Original Complaint and the FAC. SWC questions

8

Plaintiff's excuse that she just failed to recall the events from several years ago. SWC points out that these allegations are designed to undermine specific arguments advanced in SWC's Second Motion to Dismiss (Doc. No. 19). SWC asserts that Plaintiff failed to mention these new facts in her response to SWC's Second Motion to Dismiss. Then, two months later, Plaintiff presented those facts in the SAC. SWC maintains that the additional allegations are a "transparent, bad-faith attempt to avoid a ruling on Defendant's Second Motion to Dismiss and increase Defendant's litigation expenses." (Resp. at 9.)[4]

In her Reply, Plaintiff contends that these allegations merely fill in missing facts and present no new theories of recovery. Plaintiff asserts that SWC is not overly prejudiced because the case is in its early stages. Plaintiff maintains that she only recently remembered these particular facts. Plaintiff avers that "it has taken some time for her to obtain necessary documents to refresh her memory of the many awful and continuous assaults on her person, integrity, and job that have taken place over a [sic] eight year time span." (Reply at 9.) Plaintiff further notes that "[i]t is not unexpected that occurrences happening over an eight year period would take time to be recalled. It is not hard to imagine that it would take considerable time and effort for Plaintiff to engage in reflection and review of her memory and retrieve old employee manuals." (*Id.* at 12.)

Since Plaintiff has offered a plausible explanation for her delay in alleging these additional facts, the Court will not deny Plaintiff the opportunity to prove them. *But see Frank v. United States*, 3 F.3d 1357, 1365–66 (10th Cir. 1993) (holding that untimeliness may be

---

[4] SWC argues that Plaintiff's SAC would prejudice it because it has already expended significant time and expense briefing two motions to dismiss based on the allegations in Plaintiff's Original Complaint and FAC. (Doc. Nos. 11, 19). SWC maintains that if the Court allows Plaintiff to file the SAC with additional factual allegations, while the Second Motion to Dismiss (Doc. No. 19) is pending, SWC will be prejudiced because it will have to file a third motion to dismiss, unnecessarily expending party and judicial resources. (Resp. at 3.) However, the Second Motion to Dismiss is no longer pending, and the Court will only allow the allegations that would not be futile and not subject to dismissal.

adequate reason to deny motion to amend when movants admitted they purposely left out a party as a strategic decision then requested leave to amend and add the party four months after the deadline for amendments). Since the factual allegations in the SAC are sufficient to plausibly state a claim that Plaintiff had an implied contract that she could be fired only for good cause, the Court would not dismiss that claim and the amendment would not be futile. Hence, the Motion will be granted as to the additional allegations in SAC ¶ 12.

         D.      Allegations about Cody Stewart.

In the section of the SAC alleging racial harassment, Plaintiff adds an allegation that Cody Stewart "was continuously absent, and engaged in sexual harassment with impunity in front of management personal [sic] including showing a picture of his genitals at a company going away party." (SAC ¶ 40 vi.) In her FAC, Plaintiff included other allegations about Cody Stewart's sexually offensive behavior to support her negligent supervision claim.  In the MOO, the Court found that those allegations were irrelevant to Plaintiff's negligent supervision claim because she did not allege that she witnessed those events or that those events caused her injury. For the same reasons, the additional allegations involving Mr. Stewart's behavior do not plausibly support either Plaintiff's negligent supervision claim or her racial harassment claim. Hence, amendment to add those allegations would be futile, and the Motion is denied as to those allegations.

         E.      Plaintiff's State tort claims: Allegations of water spraying are not futile.

Plaintiff alleged that she and other female employees were sprayed with water at least three times per week from 2007 to May 2014. (SAC ¶ 38 v.) In her SAC, Plaintiff added a date to her allegation that team leader, Danny Garcia sprayed her with water. (SAC ¶ 38 iv) (stating that the event occurred "in approximately July, 2007").  Although the Court has dismissed

Plaintiff's claims of sexual harassment under the NMHRA and Title VII for failure to exhaust administrative remedies, the Court determined that the water spraying conduct could support Plaintiff's claim for intentional infliction of emotional distress (IIED).[5] Since several supervisors allegedly took part in or allowed this behavior, the Court found that these allegations could also support Plaintiff's negligent supervision claim.

SWC maintains that this new allegation is futile because it occurred beyond the three-year statute of limitations applicable to Plaintiff's IIED and negligent supervision claims.[6] In the MOO, the Court concluded that Plaintiff's IIED claim involved a continuing tort over a period of seven years, from 2007 to 2014, and none of the alleged behavior was time-barred. Hence, allegations about Mr. Garcia's 2007 water spraying conduct are not time-barred.

In the SAC, Plaintiff repeats allegations that she was "grabbed from behind" on two occasions in 2007. In the MOO, the Court held that those allegations were not part of the continuing tortious behavior because they were discrete instances of conduct. Because the events occurred in 2007, they were not actionable because they occurred prior to the cut-off date imposed by the statute of limitations for IIED and negligent supervision claims. Hence, the Court finds that these two incidents are time-barred, and Plaintiff should exclude those allegations from the SAC.

      F.     Plaintiff's § 1981 claims.

          1.     Allegations related to racial hostile work environment.

Plaintiff's seventh claim for racial discrimination under 42 U.S.C. § 1981 is governed by a four-year statute of limitations. *Jones v. R.R. Donnelley &* Sons, 541 U.S. 369, 382 (2004) (applying federal four-year statute of limitations to § 1981 claims). To support her § 1981 claim

---

[5] Plaintiff alleged that the water spraying was embarrassing and humiliating because it revealed female anatomy and under garments. (SAC ¶¶ 38 iii-vii.)
[6] Both claims are governed by the three-year statute of limitations. NMSA 1978 § 37-1-8.

that she was subjected to a hostile work environment, Plaintiff described how several employees repeatedly used the racially offensive epithet, the "n-word" in her presence. In her SAC, Plaintiff added two factual allegations: (1) the alleged use of the racial epithet by Tony Garza between 2008 and 2012 (SAC ¶ 40 ii); and (2) the alleged use of the racial epithet by Alias Garcia between 2007 and 2009 (SAC ¶ 40 iii). SWC argues that allegations about events that occurred more than four years before December 7, 2015, the date Plaintiff's Original Complaint was filed, are time-barred and would be futile. In the MOO, however, the Court allowed allegations that Tim Rogers used racial epithets in 2009 even though that event was outside of the limitations period. The Court found that Plaintiff had adequately alleged that SWC employees' use of offensive racial epithets was within the scope of the same hostile work environment and could be asserted even though outside the limitations period. (MOO at 49.) Likewise, the additional allegations that Mr. Garcia and Mr. Garza used the same offensive epithet are not time-barred, and the Motion will be granted as to those allegations. *Cf. Duncan v. Manager*, 397 F.3d 1300, 1309 (10th Cir. 2005) (allowing sexual harassment claim to include allegations of events outside of the filing period that were related by "type, frequency, and perpetrator.").

        2.        Plaintiff's allegations of racial discrimination.

In her seventh claim, Plaintiff alleged that SWC "intentionally discriminated against Plaintiff on the basis of race in the performance of her contract including failing to promote her, and tolerating a racially hostile work environment, and terminating her contract and in the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship with [SWC]." (SAC ¶ 88.) In the MOO, the Court determined that Plaintiff presented four § 1981

claims: (1) disparate treatment; (2) wrongful discharge; (3) failure to promote; and (4) hostile work environment. Plaintiff adds several factual allegations to ¶ 40 of the SAC:[7]

> xiii. Only whites were hired in the front office as a general rule.
>
> xiv. In 2012, Ricardo Rivas (male Hispanic Production Manager), accused Plaintiff of taking a tanker of milk without the seals. Plaintiff was taken to the Human Resources Office (Earnest Lovelace who is African-American), who found no merit in the bogus complaint. After Mr. Lovelace found no merit, Mr. Lovelace was referred to as a "faggot" (a derogatory and offensive term for a gay person), in Plaintiff's presence by Justin Musick a supervisor and Ricardo Rivas. Earnest Lovelace lasted approximately 1 year in the Human Resources position. Shortly after the incident, Earnest Lovelace was placed in an outside "trailer" and Leah Jackson (a white female), was placed in the office.
>
> xv. In 2010 Ricardo Rivas put in a "timer" in the lab to see how long Plaintiff was taking testing milk.
>
> xvi. Plaintiff was passed over for numerous jobs between 2008 and 2014 despite being better qualified that [sic] the applicants who were given the job including (who were white or Hispanic): August 2008, lab tech position; September 2008, UF operator position; August, 2009, Quality assurance; 2011, Quality assurance position; 2012, assistant safety director; February, 2014 production manager. Many jobs were placed on the internal bulletin board and Plaintiff should have been eligible for all such promotions because she had an application on file. Sometimes the positions would not be placed on the bulletin board and the promotion would be given to the person that management wanted to give the job to at that time. George Chappell, the SWC President would sit in on interviews of employees who he wanted to promote despite Plaintiff's better qualification [sic] she was passed over and lesser qualified white or Hispanic employees were promoted.

(SAC ¶ 40 xiii-xvi.)

SWC contends that the allegations about SWC actions toward Mr. Lovelace are irrelevant to any of Plaintiff's § 1981 claims. However, the alleged treatment of Mr. Lovelace seems to be linked to Mr. Lovelace's finding that Mr. Rivas' complaint against Plaintiff had no merit. Thus, the additional allegation is relevant to one or more of Plaintiff's § 1981 claims. (SAC ¶ 40 xiv.)

---

[7] Paragraph 40 of the SAC alleges that "Plaintiff was subjected to a racially hostile work environment because she was African American[.]" However, the subparagraphs under ¶ 40 describe events that could also support claims for disparate treatment and failure to promote.

Plaintiff's allegation that, as a general rule, only whites were hired in the front office is futile because the allegation is not related to Plaintiff's § 1981 claims. (SAC ¶ 40 xiii.) Hence, that allegation should be excluded from the SAC.

The allegations in SAC ¶ 40 xvi concerning Plaintiff's failure to receive promotions that occurred prior to December 7, 2011 may not be used to support her § 1981 disparate treatment claim.[8] *Cross v. The Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004) (finding that plaintiff could support § 1981 disparate treatment claim only with allegations about failures to promote during the four-year statute of limitations period).

Plaintiff's allegation that in 2010 Mr. Rivas put a timer in the lab to time her work activities is actionable if Plaintiff ties it into the general hostile work environment at SWC. *Duncan supra*. In sum, the Motion is granted as to the allegations in SAC ¶ 40 xiv and ¶ 40 xv and as to allegations that are within the four-year statute of limitations period. Allegations about discrete events that predate December 7, 2011 will not be allowed, and the Motion is denied as to those allegations.

G. Plaintiff's ADEA claim.

In the SAC, Plaintiff submits additional allegations in support of her eighth claim of age discrimination: (1) Plaintiff requested from several named managers that she be given a decent chair to set in (SAC ¶ 41 vi); (2) George Chappell purchased expensive chairs for workers in the front office, but removed the "practically brand new chairs" and put them in the SWC warehouse (SAC ¶ 41 vi);[9] (3) in 2013 and 2014, the heat went out in the lab, but Plaintiff was forced to work without heat during the cold winter with only a small plug in heater (SAC ¶ 41 ix); and (4)

---

[8] Since Plaintiff filed her Original Complaint (Doc. No. 1) on December 7, 2015, the cut-off date for her failure to promote claims is four years prior to that date, which is December 7, 2011.
[9] The additional allegations naming the managers who denied her a decent chair and the allegation that Mr. Chappell stored the slightly worn chairs are new.

14

Mr. Denton promised Plaintiff would receive a coat during that cold winter, but she never received one, but other workers received coats from Mr. Denton. (SAC ¶ 41 x.)

In the MOO, the Court determined that Plaintiff exhausted her ADEA claim only as to her failure to receive a promotion to a Quality Assurance position in January 2014. *See* MOO at 51–54. Since none of the additional allegations were described in Plaintiff's Charge, she may not pursue the allegations as part of her ADEA claim because those allegations were also not exhausted. Hence the Motion is denied as to the four additional allegations in SAC ¶¶ 41 vi, ix, and x.[10]

### H. Bad faith.

A motion to amend is in bad faith when the party uses it as a dilatory tactic or when the party seeks to avoid an adverse ruling. SWC cites *Stein v. Disciplinary Bd. of the Supreme Court of N.M.*, No. 04 CV 840, 2006 WL 4079022, *1 (D. N.M. May 31, 2006) to argue that Plaintiff filed the Motion in bad faith. In *Stein*, the plaintiff moved for leave to amend a complaint that the plaintiff had already amended two times. *Id.* at *2. In addition, the defendants' dispositive motion, pending for 10 months, was ripe for decision. *Id.* The court denied the motion to amend because the proposed amended complaint added new and independent claims on the eve of the court's decision to dismiss the complaint in its entirety. *Id.* This case is certainly distinguishable. Plaintiff was not required to seek leave to file her FAC. *See* Fed. R. Civ. P. 15(a)(1). And this is Plaintiff's first motion to amend. There are no pending dispositive motions because the Court has ruled on SWC's Second Motion to Dismiss. The discovery completion date, October 3, 2016, is several months away. No new claims are asserted in the SAC, and the Court will deny Plaintiff leave to add several time-barred and irrelevant allegations.

---

[10] Since the Court granted the Second Motion to Dismiss as to the unexhausted allegations of age discrimination other than the January 2014 failure to promote, the Court will ask Plaintiff to exclude the allegations in ¶¶ 41 ii–viii from her SAC.

15

SWC also argues that Plaintiff's counsel has exhibited bad faith. According to SWC, since this is counsel's fourth consecutive employment case against SWC, he should be well aware of SWC's employment manual and its policy of allowing modification of an employee's at will status only in writing signed by SWC's president. As the Court has already stated, Plaintiff was hired in 2006 four years before Ms. Chavez-Acosta was hired and three years before Ms. Macias was hired.[11] Moreover, the Court cannot consider the employee manual, which was presented as evidence in the *Chavez-Acosta* and *Macias* cases. At this stage of the proceedings, the Court is not convinced that "Plaintiff's Motion is . . . a transparent, bad-faith attempt to avoid a ruling on Defendant's Second Motion to Dismiss and increase Defendant's litigation expenses." (Resp. at 9.)

SWC also notes that Plaintiff failed to fully comply with Local Rule 15.1, which requires a party to attach a proposed amendment to a motion to amend. D.N.M. LR-Civ. 15.1. Although Plaintiff attached her proposed SAC to her Motion, Plaintiff failed to attach the exhibits referred to in the SAC. Usually a party may refer to exhibits attached to another filed document to avoid re-filing exhibits. However, since the SAC will supersede the FAC, the Court instructs Plaintiff to re-file the exhibits with the SAC.

The United States Supreme Court has stated that, in the absence of an apparent reason such as "undue delay, bad faith or dilatory motive . . . repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment[,]" leave to amend should be freely given. *Skyline Potato Co., Inc. v. Tan-O-On Marketing, Inc.*, 278 F.R.D. 628, 632–33 (D. N.M. Dec. 2, 2011) (quoting, *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Furthermore, the Tenth Circuit has held that district

---

[11] Ms. Chavez-Acosta was hired in August 2010, and Ms. Macias was hired in February 2009. *See Chavez-Acosta v. Southwest Cheese Co., LLC*, 610 F. App'x 722, 733 (10th Cir. 2015); and *Macias v. Southwest Cheese Company, LLC*, Case No. 12 CV 350 JAP/WPL, First Amended Complaint (Doc. No. 8) at 3.

courts should grant a plaintiff leave to amend when doing so would yield a meritorious claim. *Id.* (citing *Curley v. Perry,* 246 F.3d 1278, 1284 (10th Cir. 2001) and *In re Thornburg Mortg., Inc. Sec. Litig.*, 265 F.R.D. 571, 579–80 (D. N.M. 2010)). However, the Court is at liberty to deny a motion to amend as to irrelevant or time-barred allegations. *See Zinn-Hoshijo v. Committee for Catholic Secondary Educ. in Colorado Springs*, No. 11–cv–01360–WYD–KMT, 2012 WL 629061, *6 (D. Colo. Feb. 27, 2012) (unpublished) (granting motion to amend only as to allegations that were not time-barred).

IT IS ORDERED that PLAINTIFF'S MOTION TO FILE SECOND AMENDED COMPLAINT (Doc. No. 32) is granted in part and denied in part as follows:

1. By June 17, 2016, Plaintiff may file a new SAC with the additional allegations in ¶ 12 (oral representations), in ¶¶ 40 ii and iii (racial epithets), in ¶ 40 xiv (bogus complaint and treatment of Mr. Lovelace), in ¶ 40 xv (timer), and in ¶ 40 xvi (failures to promote after December 7, 2011).

2. The Court will not allow time-barred and irrelevant allegations, and Plaintiff should delete such allegations as presented in the proposed SAC ¶¶ 38 i–ii (2007 grabbing incidents), ¶ 40 vi (allegations about Cody Stewart), ¶ 40 xiii (white employees in front office), ¶ 40 xvi (failures to promote prior to December 7, 2011), and ¶¶ 41 ii–x (unexhausted allegations of age discrimination).

3. Plaintiff's first claim for sexual harassment under the NMHRA has been dismissed for failure to exhaust, and Plaintiff should delete that claim from the SAC.

4. Plaintiff's second claim for sexual harassment under Title VII has been dismissed for failure to exhaust, and Plaintiff should delete that claim from the SAC.

　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　SENIOR UNITED STATES DISTRICT JUDGE